737 So.2d 821 (1999)
Joe Don TOUCHET, et al., Plaintiffs-Appellants,
v.
BAKER HUGHES INC., et al., Defendants-Appellees.
No. 98-749.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1999.
*822 James Paul Lambert, Lafayette, Chuck David Granger, Opelousas, for Joe Don Touchet, et al.
Bret Christopher Beyer, Lafayette, for Baker Hughes Inc., et al.
Dale Patrick Martin, Morgan City, David M. Thorguson, Berwick, for Dynasty/Viator Trucking.
James Isaac Funderburk, Abbeville, for Sheriff Ray Lemaire.
BEFORE: YELVERTON, WOODARD, and PICKETT, Judges.
WOODARD, Judge.
This is an appeal regarding a trial court's decision to grant an exception of prescription. The trial court found that the suit prescribed and that fifty-six of the plaintiffs could not overcome the exceptions of prescription. Because we find that the plaintiffs did not satisfy their burden of proof to overcome the exceptions of prescription, we affirm.

FACTS
In the afternoon of August 17, 1993, a 610 gallon tank owned by Baker Hughes Inc., and Baker Hughes Oilfield Operations, Inc., (Baker) and transported by Howard P. Viator, Sr. Trucking Co., Inc., (Viator), leaked 200 to 300 gallons of hydrochloric acid solution near the intersection of Jacquelyn Street and Veazey Street, located at the southern outskirts of Abbeville, Louisiana.
As he became aware that the tank was leaking, the truck driver pulled over into an abandoned driveway located near the Bud Chauvin's Trailer Park and the Touchet Trailer Park.
The chemical leaked onto the ground for some time, emitting fumes that formed a cloud of chlorine gas which traveled through and covered the trailer parks. People living close by the spill, namely, on Donna Street or Chauvin's trailer park, were evacuated by the Vermillion Parish Sheriff's Deputies, Greg Hebert, and Joe Don Touchet. Also, roadblocks were set up on streets leading into the area. The Touchet Trailer Park was not evacuated, although it was covered by the gas.
Officials from the Department of Environmental Quality, as well as ambulance and fire personnel, responded to the spill. Local network television stations reported the news on their evening broadcasts. The story was repeated the next day on their news broadcasts. It was also reported in the local newspaper the morning following the spill.
Baker cleaning crews were called to the scene. They built a containment wall to trap the acid and gas and sent a second truck to clean it up and keep it from spreading. Although the cleanup efforts were slowed by a quarter inch of rain, the spill was contained and cleaned up some time during that evening.
The local newspaper stated that "[n]o injuries were reported, although several people said they felt dizzy and nauseated." In fact, it appears that some people were *823 exposed to and inhaled the gas. As a result, they immediately felt burning sensations in their eyes, nose, throat, and chest. Some of them described having a bad taste in their mouth. Others vomited.
Within the year following the spill, Deputies Touchet and Hebert, who responded to the scene of the spill, and Trina Marceaux and her children, who lived in the Chauvin trailer park, filed a petition against Baker and Viator, alleging that they suffered injuries as a result of their exposure to the gas.
Counsel for a plaintiff hired an investigator to inquire into the facts surrounding the case. The investigator contacted everybody within the area, either personally or by leaving a note on people's doors. By doing so, the investigator communicated information regarding the symptoms and effects of exposure to the gas, and he advised them to contact the attorney who is now representing them in this suit, should they exhibit the described ailments.
This "investigation" resulted in the filing of a plethora of suits between January and August of 1995; namely, twenty-eight separate suits were filed involving a total of sixty-nine plaintiffs. Generally, the plaintiffs allege that they immediately felt at least some of the aforementioned sensations as a result of being exposed to the gas. Some claim that the sensations ceased the night of the exposure or the next day; others claim that it disappeared within a couple of days, gradually decreasing until completely gone. Strikingly, aside from Velta Darby who immediately went to the emergency room at Abbeville General for a breathing treatment, not one plaintiff went to the hospital or a doctor to seek medical attention. In fact, they claim that the spill was forgotten within a few days.
Nevertheless, the plaintiffs allege that within several months and beyond, they developed various symptoms, including shortness of breath, dizziness, sinus problems, headaches, and hair loss, among other things. Only a few of these plaintiffs sought medical attention, and only a handful of them asked their physician if their ailments could be connected to chlorine gas exposure. To the date of their testimony in November of 1997, some plaintiffs had yet to seek medical attention regarding the alleged ailments for which they are suing. All of the "late filing plaintiffs" claim that their contact with the investigator or their attorney triggered their understanding that their ailments were connected to the spill.
Pursuant to a motion filed on April 24, 1995, the trial court, on May 8, 1995, issued an order to have the suits consolidated. The defendants then filed an exception of prescription, which Judge Aaron granted pursuant to a hearing held on July 14, 1997. A motion for "reconsideration" was filed by the plaintiffs on July 23, 1997. A judgment, granting the peremptory exception of prescription, was rendered on August 11, 1997. Additionally, a judgment granting the defendants' motion to dismiss, with costs and attorney's fees, the suits of William Braly (Docket Number: 95-66452), Jeremiah Hebert (Docket Number: 95-65626), William Fanguy (Docket Number: 95-65719), Robert Garcia (Docket Number: 95-65690), and Charles Randall Lowery (Docket Number: 95-65628) was rendered on August 12, 1997.
On August 18, 1997, the plaintiffs filed a motion for a new trial regarding the exception of prescription. Oddly, the motion was heard by Judge Conque, instead of Judge Aaron. Judge Conque granted the motion for new trial on September 30, 1997. Hearing on the new trial of the exception of prescription was had on November 3-4, 1997. After hearing the testimony of most plaintiffs concerned by the exception, Judge Conque granted the defendants' exception of prescription as to fifty-six plaintiffs. Nevertheless, he denied the exception of prescription involving Michael Darby (Docket Number: 95-65631), Velta Darby (Docket Number: 95-65627), Thomas Darby (Docket Number: *824 95-65627), and Kayla Duck Touchet for Whitney Touchet (Docket Number: 95-65857). The fifty-six plaintiffs appeal.
These appeals have been consolidated. We will give our reasons for judgment in the opinion of the instant captioned appeal. Separate judgment will be entered this date for the remaining appeals in which the following plaintiffs have sued defendants, Baker Hughes, et al., to wit: 98-750 Larry Moore, 98-751 Ovey Luquette, et al., 98-752 Yvonne Meaux, et al., 98-753 Gerald Bourgeois, et al., 98-754 Suzanne Peltier, et al., 98-755 Todd Moreland, et al., 98-756 Brian Cornez, et al., 98-757 Martha Lege, et al., 98-758 Clarence Darby, et al., 98-759 Martha Cannella, et al., 98-760 Julia Pommier, et al., 98-761 Lola Lange, 98-762 Steve Lebeouf, et al., 98-763 Debra Gauthier, et al., 98-764 William Fanguy, et al., 98-765 Marilyn Wilson, 98-766 Jodi Peltier, et al., 98-767 Rebecca Doucet, et al., 98-768 Laurie and Farrell Theall, 98-769 Archie Lowery, 98-770 Thomas Dale Frederick, 98-771 Zelmay Landry, and 98-772 Gladys Braly, et al.

LAW
The only assignment of error alleged by the plaintiffs is that Judge Conque's decision finding that their suits had prescribed was manifestly erroneous. Specifically, they claim that the one-year prescription applicable to delictual actions was interrupted by an exception to prescription. They assert that they did not have knowledge, whether actual or constructive, to have suffered damages as a result of the exposure to the gas during the prescriptive period, that they connected their ailments to the spill at the time they were contacted by the investigator. Thus, the one-year prescription started running when they were contacted by the investigator.
The party raising the exception of prescription has the burden of proving that the claim has prescribed. See Younger v. Marshall Indus. Inc., 618 So.2d 866 (La.1993). Nevertheless, when it appears on the face of the pleadings that the prescription has run, the burden shifts to the opposing party to show that the prescription was suspended or interrupted. Younger, 618 So.2d 866; Anderson v. Beauregard Mem. Hosp., 97-1222 (La. App. 3 Cir. 3/6/98), 709 So.2d 283.
The prescriptive period applicable in the case sub judice is the one-year liberative prescription for delictual actions pursuant to La.Civ.Code art. 3492. The spill occurred on August 17, 1993 and was a one time event. The first suits concerned by this appeal were filed on January 25, 1995 or seventeen months after the spill. Thus, the petition reveals on its face that it had prescribed. As a result, the plaintiffs bear the burden of establishing that the prescription had been interrupted or was suspended.
To establish that the prescription has been interrupted or suspended, the plaintiffs may avail themselves of the doctrine of contra non valentem non currit praescriptio. Simply put, this means that prescription does not run against those who cannot act. It was created by the jurisprudence as an exception to the general rules of prescription. Essentially, it is based on the premise that, in some circumstances, equity and justice require that the prescription "be suspended because the plaintiff was effectually prevented from enforcing his rights for reasons external to his own will." (citations omitted.) Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211. Because it directly contradicts provisions of the civil code, namely La.Civ.Code art. 3458, it must be strictly construed. Harsh v. Calogero, 615 So.2d 420 (La.App. 4 Cir.1993).
Generally, the doctrine of contra non valentem has been applied to suspend the running of prescription when the case falls within at least one of four categories, only one of which is conceivably applicable in the instant case, that is, the "discovery rule." Pursuant to the discovery rule, the doctrine of contra non valentem suspends *825 prescription where the cause of action is not known or reasonably knowable by the plaintiff. Cole v. Celotex, 620 So.2d 1154 (La.1993).
Thus, the critical issue consists in determining the point in time at which the doctrine of contra non valentem no longer suspends the running of the prescription. Griffin v. Kinberger, 507 So.2d 821 (La. 1987). Regarding this issue, we note that constructive knowledge triggers the running of the prescriptive period. Maung-U v. May, 556 So.2d 221 (La.App. 2 Cir.), writ denied, 559 So.2d 1385 (La.1990). The supreme court in Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285, 287 (1970), defined constructive knowledge as follows:
Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.
Nevertheless, constructive notice as defined by the supreme court in Chrysler, is no longer the ultimate criterion that is focused upon to determine whether the discovery rule applies to a specific case. The rule has been "refined" by the supreme court to emphasize the reasonableness of the tort victim's actions or inactions. See Kinberger, 507 So.2d 821. Thus, prescription will not accrue against one who does not have actual or constructive knowledge of the facts upon which his cause of action is based, "as long as such ignorance is not willful, negligent or unreasonable." Wimberly, 635 So.2d 206, 212.
In determining the reasonableness of the plaintiffs' actions or inactions concerning potential health problems, the court in Maung-U, 556 So.2d 221, 225 stated:
When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to the plaintiff. Inaction by the plaintiff for more that a year under such circumstances is not reasonable.
Thus, a plaintiff is "deemed to know that which he could have learned from reasonable diligence." La Plaque Corp. v. Chevron U.S.A. Inc., 93-1597 (La.App. 4 Cir. 5/26/94), 638 So.2d 354, 358, writ denied, 94-2125 (La.11/11/94), 644 So.2d 395. Also, in Hospital Service Dist. No. 1 of Jefferson Parish v. Alas, 94-897 (La.App. 5 Cir. 6/28/95), 657 So.2d 1378, 1383, writ denied, 95-1959 (La.11/13/95), 662 So.2d 473, the court stated:
If an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest and he fails or refuses to profit by it, if he closes his eyes to the notice spread before him, the law will hold him as bound by the same, and as fully notified as if he had taken thorough personal cognizance at the time of the information imparted and of the notice given.
Finally, we note that we may not reverse the trial court's decision absent finding that it is manifestly erroneous. See Cagle v. Loyd, 617 So.2d 592 (La.App. 3 Cir.), writ denied, 620 So.2d 877 (La. 1993); See also Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992).
In the case sub judice, the plaintiffs knew of the facts surrounding the spill. Their neighborhood was barricaded and surrounded by the police, the fire department, ambulances, and the media. The story regarding the spill was reported three times on television in the local news and once in the local newspaper. Some plaintiffs within the trailer park were evacuated from their homes. They all saw the *826 cloud of gas, were exposed to it, and for most plaintiffs, they immediately suffered symptoms including, but not limited to, burning sensations in their eyes, nose, throat, and chest, and they felt nauseated and dizzy. These circumstances should have placed the plaintiffs on notice "enough to excite their attention."
The plaintiffs generally argue that their suspicions were put to rest, because the symptoms progressively vanished and then reappeared under a different form. The long term recurring symptoms commonly described by the plaintiffs include, but are not limited to, shortness of breath, severe headaches, gum bleeds, dizziness and loss of their sense of balance, loss of memory, loss of hair, recurring sinus and upper respiratory infections, and skin rashes.
Notwithstanding the presence of these alleged symptoms, which most plaintiffs claim appeared after the spill, only a few of them attempted to seek medical treatment. Judge Conque found the actions of the few plaintiffs reasonable and dismissed the others, finding that the exception of prescription applied to them.
After reviewing the record and in conjunction with the manifest error standards, we must agree. For example, we are dismayed by the testimony of some plaintiffs, such as the Morelands. The Morelands lived in the Touchet Trailer Park at the time of the spill. Ms. Moreland is an emergency room nurse at Abrom Kaplan Memorial Hospital and has three children. Her husband was an ambulance driver who was constantly in contact with physicians. They claim that all five of them suffered the same symptoms which appeared after the spill; namely, Ms. Moreland listed upper respiratory problems, such as recurring sinus infections, bleeding gums, skin irritation, severe headaches, and hair loss. Nevertheless, she did not seek medical attention for herself or her children. She claims that she related the symptoms to the spill after being contacted by the investigator, yet she still had not consulted with a physician, for herself or her children, at the time of her testimony.
Consider also Martha Lege. When questioned on the reasons why she did not try to find out whether her ailments were connected to the spill, she admitted: "I'd rather not know if I'm dying or not." Also, Debra Daniels stated that she was too scared to ask anybody what had spilled and whether it might have an effect on her and her child. These clearly exemplify the type of behavior described in Wimberly as negligent or unreasonable, at best, and probably willful.
Regarding all fifty-six appellants in the instant case, Judge Conque stated:
I have a problem applying contra non valentum, when people are evacuated from their homes. They see a cloud of something or other. They experience immediate symptoms from those clouds. There's conversation for the next couple of months buzzing through the trailer park. You know, a lot of these folks don't do anything. And go along with their lives, having the ailments that may or may not be related, never mentioned anything to the doctors that they do see (sic). And nothing happens until an investigator, who is already working for someone who has filed the suit, and he suggested to them that they may have been damaged, and may have a claim as well. Then they say, "Well, all right. Maybe we've got something here." But they still don't go to their doctors. They still don't inquire. They still don't make any attempt (sic). All they do is call the lawyer that the investigator suggest they should call, if they "have any concerns."
. . . .
It's difficult, very difficult for me to understand, as human being (sic) and as a parent, how people can be evacuated from their homes, with their small children having these symptoms, and they forget about it, until somebody comes and tells them "Hey."
Judge Conque did not reject completely all of the plaintiffs' claims, but took the *827 time to examine the circumstances of each case before reaching a decision. For two straight days, he had the benefit of receiving a plethora of testimony from the alleged tort victims. We also note that he actively participated in the plaintiffs' examination. Thus, after reviewing the entire record, we do not find manifest error in his conclusion that the fifty-six appellants did not act reasonably in attempting to discover the source of their ailments and act upon them by legal action so as to interrupt the running of the prescription. We agree with Judge Conque, that under the circumstances of this case, it would have been reasonable for the plaintiffs, at least, to attempt to find out whether their ailments could be connected to the spill. The plaintiffs are "deemed to know" facts that they could have discovered through exercise of reasonable diligence. La Plaque Corp., 638 So.2d 354, 358. Because they did not act with such requisite reasonable diligence, they clearly did not meet their burden of proving that an exception to prescription was applicable to their cases.

CONCLUSION
For the aforementioned reasons, we affirm the trial court's grant of the exception of prescription. Costs are assessed to the appellants.
AFFIRMED.