STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1696


MELBA BRAUD

VERSUS

DR. WILLIAM A. CENAC, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NUMBER 2003-584
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

**********

BILLIE COLOMBARO WOODARD
JUDGE

**********

Court composed of Sylvia R. Cooks, Billie Colombaro Woodard, and Marc T. Amy, Judges.

AFFIRMED.

Cooks, J., concurs and assigns reasons.
Amy, J., concurs in the result.

Charles G. Justice III
635 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 525-7575
C O U N S E L    F O R
PLAINTIFF/APPELLANT:
    Melba Braud

Eugene J. Sues
Misty Shannon Antoon
Barbara L. Bell
Randall M. Seeser
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, Louisiana 71307
(318) 445-6471
C O U N S E L    F O R
DEFENDANT/APPELLEE:
    M. Angela Mayeux

Tiffany B. Thornton
 James R. Shelton
Durio, McGoffin & Stagg
Post Office Box 51308
Lafayette, Louisiana 70505
(337) 233-0300
C O U N S E L     F O R
DEFENDANT/APPELLEE:
        Dr. William A. Cenac, M.D.

Spiro J. Verras
Pan-American Life Center
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500
C O U N S E L     F O R
PLAINTIFF/APPELLANT:
        Melba Braud

WOODARD, Judge.

Ms. Braud appeals the trial court's dismissal of the two Defendants via exceptions of prescription. We must affirm the trial court's judgments.

* * * * *

The Plaintiff, Ms. Melba Braud, sued both Dr. Angela Mayeux and Dr. William Cenac for medical malpractice. Specifically, she alleged that Dr. Mayeux negligently performed her left hip replacement surgery, which caused her left leg to be slightly longer than her right, and that Dr. Mayeux failed to treat a post-surgical infection. She also claimed that Dr. Cenac was negligent in his failure to diagnose and treat this same infection. Ultimately, Dr. Chad Millet removed her hip prosthesis, treated the area, and inserted a new prosthesis.

The trial court found that Ms. Braud's malpractice claims against both physicians had prescribed and, therefore, dismissed them. She appeals.

* * * * *

**PRESCRIPTION APPLICABLE TO MEDICAL MALPRACTICE CLAIMS**

Louisiana Revised Statute 9:5628 provides, in pertinent part:

> A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought *unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.*

(Emphasis added.)

1

**PRESCRIPTION FOR LEG LENGTH DISCREPANCY**

Dr. Mayeux performed hip arthroplasty surgery on Ms. Braud's left hip on July 21, 1997. After the surgery, her left leg was longer than her right leg. On January 25, 2002, Ms. Braud filed a complaint with the medical review board against Dr. Mayeux, claiming that the difference in the length of her legs resulted from Dr. Mayeux's improper performance of her surgery. She asserted that she did not discover for some time the reason for her length inequality, giving rise to malpractice, or her actual long-term prognosis because she trusted Dr. Mayeux, who told her that the leg length discrepancy would alleviate itself over time. She avers that she relied on these misrepresentations "until well after January 25, 1999;" therefore, she did not discover that she may have a cause of action against Dr. Mayeux until later than January 25, 1999.

While the alleged discovery date is critical in determining when La.R.S. 9:5628's one-year prescriptive period begins to run, it is irrelevant in determining whether the three-year prescriptive period bars Ms. Braud's claim, because we must employ an objective measure of whether she filed suit within three years from the date of surgery, constituting the alleged malpractice.[1]

Dr. Mayeux performed Ms. Braud's hip replacement surgery on July 21, 1997. Ms. Braud filed her claim against Dr. Mayeux on January 25, 2002, over three years after the surgery. Thus, her claim is prescribed on its face. This shifts the burden to Ms. Braud to show that it is not prescribed.[2]

The jurisprudential doctrine of *contra non valentem agere nulla currit praescriptio* recognizes that "in some circumstances, equity and justice require that the prescription 'be suspended because the plaintiff was effectually prevented from enforcing his rights for reasons external to his own will.'"[3] Prescription will not run against a person who is unable to act, which means unable to file suit.[4] The *contra non valentem* doctrine contemplates four different scenarios in which a person is

---

[1]La.R.S. 9:5628; *In re Medical Review Panel for Claim of Moses*, 00-2643 (La. 5/25/01), 788 So.2d 1173.

[2]*Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502, 509 n.10.

[3]*Touchet v. Baker Hughes, Inc.*, 98-749, p. 5 (La.App. 3 Cir. 2/3/99), 737 So.2d 821, 824 (quoting *Wimberly v. Gatch*, 93-2361 (La. 4/11/94), 635 So.2d 206)).

[4]*Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96), 674 So.2d 960.

unable to file suit, only two of which are relevant in the instant case. One scenario, often referred to as the "discovery rule," suspends prescription where a plaintiff neither knew she had a cause of action nor could have learned of it through reasonable diligence.[5]

Louisiana Revised Statute 9:5628 incorporates the jurisprudential discovery rule, allowing a plaintiff to file suit one year from the date she discovers, or should have discovered, that she had a cause of action, regardless of the date of the wrongful conduct giving rise to such cause of action.[6] However, the statute provides an outside prescriptive period of three years. While jurisprudence holds that the three-year period is a prescriptive, rather than peremptive period, it places an overall time limit on the discovery rule.[7] In other words, if suspension is based on the discovery rule type of *contra non valentem*, the three year period cannot be suspended or interrupted.[8] Accordingly, it cannot save Ms. Braud's claim from prescription in the instant case.

The other relevant scenario that *contra non valentem* contemplates is when the defendant does something to conceal the wrongful conduct and, in effect, prevents the plaintiff from availing herself of her cause of action.[9] The supreme court has not yet decided whether a plaintiff may invoke this category to suspend the running of the three-year prescriptive period in La.R.S. 9:5628; however, it has strongly implied that if the defendant's conduct rises to the level of fraudulent concealment, misrepresentations, or ill practices, the three-year prescriptive period can be suspended.[10] We agree with this interpretation of La.R.S. 9:5628 and, therefore, proceed to evaluate Dr. Mayeux's conduct under this standard.

Ms. Braud alleges that Dr. Mayeux repeatedly assured her that her leg length discrepancy would alleviate itself over time. Dr. Mayeux admits telling Ms. Braud that once her abductor muscles grew stronger, she would not feel so unlevel. This,

---

[5]*Touchet*, 737 So.2d 821.

[6]*Moses*, 788 So.2d 1173.

[7]*Campo*, 828 So.2d 502.

[8]*Id.*

[9]*Moses*, 788 So.2d 1173.

[10]*Id.*

3

alone, does not prove any intentional misconduct or concealment on Dr. Mayeux's part. However, Dr. Mayeux admitted that she knew Ms. Braud's leg length inequality could have been the result of the length of the prosthesis she used in the surgery. Specifically, she said:

> Q. Tell me again, please - - you mentioned a couple of reasons that a surgical patient could end up with a leg length inequality. Could you say those again, please?
>
> A. It could be from the length of the prosthesis. It can also be from degenerative scoliosis in the back, causing the pelvis to be unlevel.
>
> Q. Is there . . . something . . . that could have happened during the surgery, caused by the surgeon, that could cause there to be a leg length inequality?
>
> A. We had just discussed that. Yes, sir. The length of the prosthesis.

When a physician breaches her duty to disclose information to a patient, it can rise to the level of fraudulent concealment. However, when a physician breaches that duty because she has negligently misdiagnosed the patient's condition, the physician's conduct does not rise to the requisite level because "[a] doctor who negligently misdiagnoses a patient's condition is, at least at the time of the diagnosis, as ignorant of his negligence as is the potential plaintiff. Obviously, a defendant cannot be said to have concealed facts of which he had no knowledge."[11]

In the instant case, Dr. Mayeux was not ignorant of the possible cause of the inequality. On the contrary, the evidence reveals that she knew it could be because she failed to properly measure the prosthesis she inserted, yet, she did not disclose this information to Ms. Braud. Furthermore, instead of determining for sure the true cause or disclosing to Ms. Braud all of the possible causes, she affirmatively and conclusively stated to Ms. Braud that her weak muscles were the problem. In effect, she concealed from Ms. Braud the information that would have alerted her to a possible cause of action.

Dr. Mayeux's failure to make a complete disclosure to her patient prolonged this patient's agony and recovery, while potentially insuring that she would be

---

[11]*Whitnell v. Menville*, 540 So.2d 304, 308 (La.1989).

foreclosed, due to prescription, from bringing a cause of action for malpractice. Nevertheless, without qualification, our supreme court has found that a physician's reassurances to a patient that her condition will alleviate itself over time does not automatically rise to the level necessary to invoke the relevant category of *contra non valentem*;[12] the supreme court has determined that it is necessary for a plaintiff to prove ill motive or intentional concealment on the physician's part.[13] Ms. Braud has not presented us with this evidence. Thus, we are constrained from finding that she proved concealment and ill practices, on Dr. Mayeux's part, sufficient to suspend La.R.S. 9:5628's three-year prescriptive period.

Moreover, even if we were to find that Dr. Mayeux's conduct suspended prescription, it would only suspend it until their relationship terminated.[14] She last saw Dr. Mayeux on December 3, 1998. Therefore, at the very latest, Ms. Braud's claim prescribed on December 3, 2001. She did not file her claim until January 25, 2002. Accordingly, we must find that her claim, concerning her leg length inequality, is prescribed under La.R.S. 9: 5628's three-year period, regardless of Dr. Mayeux's misrepresentations.

**PRESCRIPTION FOR DIAGNOSIS AND TREATMENT OF INFECTION**

*Claim against Dr. Mayeux*

Ms. Braud developed an infection at the surgical site soon after the surgery. Dr. Mayeux diagnosed the infection and treated her with antibiotics for several weeks, after which she thought the infection had resolved. In fact, she continued to treat her until December 3, 1998. Subsequently, Drs. William Cenac, Victoria Silas, Chad Millet, and Brobson Lutz, as well as Ms. Braud's general physician, Dr. Milton Jolivette, treated her. In 2001, Dr. Millet removed the hip prosthesis from Dr. Mayeux's surgery, treated Ms. Braud's infection, and inserted another prosthesis. Ms. Braud argues that she did not discover her potential cause of action against Dr. Mayeux for failure to diagnose and treat the infection until Dr. Millet diagnosed the infection in April 2001. Again, the date she discovered her cause of action is

---

[12]*See e.g., Gover v. Bridges*, 497 So.2d 1364 (La.1986); *Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96), 674 So.2d 960.

[13]*See Id.*

[14]*Moses*, 788 So.2d 1173.

5

irrelevant in determining whether La.R.S. 9:5628's three-year prescriptive period bars her claim. Ms. Braud has not alleged any intentional misconduct or concealment on Dr. Mayeux's part concerning the infection which would interrupt the three-year prescriptive period. It is unclear whether she developed the infection immediately or a few weeks after her surgery. However, her surgery date was July 21, 1997. She filed her claim on January 25, 2002, over four years later. Accordingly, her claim against Dr. Mayeux, concerning her infection, is prescribed.

### Claim against Dr. Cenac

Ms. Braud first sought treatment from Dr. Cenac on June 8, 1999. She saw him approximately a dozen times but was not satisfied with her progress. Thus, she left his care on August 17, 2000. She filed the instant claim against him on January 25, 2002, alleging that he failed to diagnose and treat the infection that Dr. Millet ultimately treated. Thus, the three year prescriptive period does not bar her claim against Dr. Cenac. Nonetheless, she filed her claim more than one year after Dr. Cenac's alleged negligent act.

Louisiana Revised Statute 9:5628's one-year prescriptive period "commences running on the date the injured party discovers or should have discovered the facts upon which his cause of action is based."[15] In other words, constructive knowledge is sufficient to trigger the running of prescription, and the plaintiff is "deemed to know that which he could have learned through reasonable diligence."[16] The heart of the inquiry is the reasonableness of the plaintiff's action or inaction. This inquiry requires consideration of the her education, intelligence, and the gravity of her condition, as well as the defendant's conduct.[17] Reasonability is a factual determination which an appellate court cannot disturb, absent a finding of manifest error.[18]

---

[15]*Griffin v. Kinberger*, 507 So.2d 821, 823 (La.1987) (citing *Lott v. Haley*, 370 So.2d 521 (La.1979)).

[16]*Touchet*, 737 So.2d at 825(quoting *LaPlaque Corp. v. Chevron U.S.A. Inc.,* 93-1597 (La.App. 4 Cir. 5/26/94), 638 So.2d 354, *writ denied*, 94-2125 (La. 11/11/94), 644 So.2d 395).

[17]*Campo*, 828 So.2d 502.

[18]*Touchet*, 737 So.2d 821.

Dr. Cenac testified, and his records corroborate, that he suspected an infection as early as January 13, 2000. His dictation from that visit states:

> She may indeed have a low grade septic hip. She does not wish to proceed with further workup at this time. I would request that she follow up with Dr. Jolivet [sic] for her generalized deconditioning.

While Ms. Braud testified that she did not recall Dr. Cenac ever discussing with her the possibility of an infection, his testimony and records evidence that he did. Dr. Cenac's dictation from Ms. Braud's February 17, 2000 visit states that his plan for her is to "recommend a thorough evaluation by *Dr. Jolivette* [her general physician] for any untoward infective activity." Dr. Cenac testified that he discussed with her the possibility of an infection but when he informed her that further surgery would probably be necessary to treat it, "she would have nothing to do with any further surgery."

Ms. Braud's last visit with Dr. Cenac was on August 17, 2000. On August 30, 2000, she saw Dr. Silas. Her initial evaluation states:

> [S]tatus post left total hip replacement with continued pain. She also has pain in her back and her knee, and it's difficult to tell how much of this pain is due to the hip itself or due to degenerative changes in those other areas. My primary concern at this point would be a [sic] indolent infection of the hip prosthesis.
>     Plan: . . . If the joint is infected, it would most likely require a revision of the components. The other possibility would be suppressive antibiotics, but that might lead to resistance and would ultimately not clear the infection.

The trial court found that Ms. Braud had knowledge or constructive knowledge of Dr. Cenac's alleged negligence in failing to diagnose and treat the condition in the latter part of 1999 or, at the latest, when Dr. Silas saw her in August 2000. Ms. Braud is "deemed to know that which [s]he could have learned through reasonable diligence."[19] If Ms. Braud had agreed to proceed with a further work-up in order to confirm the infection, as Dr. Cenac recommended, she would have learned of her potential cause of action. Thus, we cannot say that the trial court's conclusion is manifestly erroneous.

---

[19]*Id*. at 825(citing *LaPlaque*, 638 So.2d 354).

Accordingly, we sustain its grant of Dr. Cenac's exception of prescription.

**CONCLUSION**

We find that Ms. Braud's claims against Dr. Mayeux, as well as against Dr. Cenac, are prescribed and affirm the trial court's judgments granting and dismissal of their exceptions of prescription. We cast the costs of this appeal on the Plaintiff.

**AFFIRMED.**

# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT,

# 03-1696

**MELBA BRAUD**

**VERSUS**

**DR. WILLIAM A. CENAC, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NUMBER 2003-584
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**Cooks, J., Concurs.**

Without evidence of fraudulent concealment, the three years peremptive period bars plaintiff's claims against Dr. Mayeux. I am without power to change the law even if I deem it unfair in this instance, particularly considering that many patients who are victims of medical malpractice, through no fault of their own, may not discover the wrongful conduct until long after the law closes the door on their claims.