WEIMER, J.,
dissenting.
| i While I agree that the Marin plaintiffs are entitled to judgment in their favor, I respectfully dissent from that portion of the opinion which holds that the plaintiffs’ tort claims have prescribed.
The prescriptive period applicable to the plaintiffs’ tort claims is the one-year liber-ative prescription of LSA-C.C. art. 3493. Pursuant to this codal provision, the one-year period “commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage.” LSA-C.C. art. 3493. In other *269 words, the commencement of prescription under this article is triggered by actual or constructive knowledge of damage.[1]
|2After trying this case for three years, hearing the testimony, and viewing the property on two separate occasions, the district court concluded the plaintiffs did not have knowledge of damage, actual or constructive, sufficient to commence the running of prescription until they were apprised of the extensive contamination on the property. The district court’s conclusion was based on a number of factual considerations. In particular, the district court was persuaded by the fact that while the plaintiffs did have knowledge of some problems associated with the pits, they also received assurances from Exxon that the pits had been cleaned to standards determined to be acceptable by state regulations. Noting that the average person would not possess the knowledge sufficient to counter or even question such an assurance from Exxon, the court ultimately concluded that the plaintiffs’ forbearance was reasonable under the circumstances, and that prescription did not commence until an expert report revealed the truth regarding the sub-surface contamination.
As the majority opinion concedes, the ultimate issue to be resolved in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is “the reasonableness of the plaintiffs action or inaction in light of his education, intelligence, and the nature of the defendant’s conduct.” (Emphasis added.) Op. at p. 246, citing Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, and Griffin v. Kinberger, 507 So.2d 821 (La.1987). This determination of reasonableness is a factual one, subject to review for manifest error. Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354-355 (La.1992); see also Braud v. Cenac, 03-1696 (La.App. 3 Cir. 7/14/04), 879 So.2d 896, writ denied, 04-2101 (La.11/15/04), 887 So.2d 484.
, In the present case, the district court weighed each of the relevant factors— plaintiffs’ education and intelligence, as well as the nature of defendant’s conduct— hand concluded that the plaintiffs did not have knowledge, actual or constructive, sufficient to commence the running of prescription until they received the expert report. Without finding manifest error in the district court’s factual determinations, the majority opinion rejects this conclusion, citing to the recent decision in Hogg v. Chevron USA, Inc., 09-2632 c/w 09-2635 (La.7/6/10), 45 So.3d 991, as support for its independent determination that the plaintiffs had constructive knowledge of the contamination of their property more than one year prior to the institution of this lawsuit.
However, Hogg is readily distinguishable from the instant case. As the majority opinion concedes, the information in the hands of the Hogg plaintiffs “is far more detailed than the information the Marins and Breauxs had.” Op. at 249. Not only *270 did the Hogg plaintiffs have more information, such as test results showing the location of test samplings taken from plaintiffs’ property as well as the types and levels of contaminants detected, but that information came from an independent third party, the Louisiana Department of Environmental Quality, which has expertise in this area.
The situation in this case is much different. Here, the plaintiffs were told by the defendant, Exxon, that remediation was complete. Whether Exxon intentionally misrepresented this fact or simply did not know better, despite its battery of experts, the fact remains that conduct by Exxon in the form of affirmative assertions that the property had been cleaned up in accordance with all applicable regulatory standards led the plaintiffs to believe that any problems were cured. The district court determined that the plaintiffs were reasonable in relying upon these representations from Exxon. The fact that problems persisted in the surface area surrounding the pits did not undermine the reasonableness of the plaintiffs’ reliance, as plaintiffs were | obligated to tolerate some degree of ordinary, customary, and necessary wear and tear on the property attributable to Exxon’s operations. See, Rohner v. Austral Oil Exploration Company, 104 So.2d 253, 256 (La.App. 1 Cir.1958) (Infertility of three acres of land used for pits, and clay and drilling operations was due to ordinary, customary, and necessary acts of drilling company; landowner could not recover for crop loss.).
The majority opinion fully documents the actions of Exxon which convinced the district court that Exxon’s conduct prevented the plaintiffs from acquiring the requisite knowledge to commence the running of prescription more than one year prior to the date suit was filed, and those actions will not be repeated here. Suffice it to say that insofar as discovery of the contamination is concerned, either Exxon misrepresented the true facts or Exxon believed it had remedied the problem, and now, along with the majority opinion, would hold plaintiffs to a higher standard than Exxon holds itself. In effect, the argument in this case, and the one adopted by the majority, is to the effect that, “We (Exxon) told plaintiffs we had remediated the contamination; they were unreasonable to believe anything we said.”
The district court rejected this argument, and there is ample evidence in the record to support the conclusion that prescription did not begin to run until plaintiffs received the report of their expert. In other words, given Exxon’s representations, it was reasonable for the plaintiffs to delay filing suit until they received the report of an independent expert as to the actual state of the contamination. As the court of appeal correctly recognized, the record fully supports the district court’s conclusion that the plaintiffs, along with many of the Exxon personnel involved, lacked sufficient knowledge of the nature or extent of the damage or contamination to Iscommence the running of prescription on that basis. This factual determination of the district court is not manifestly erroneous, and should not have been disturbed.

. Although the majority opinion couches its discussion of the plaintiffs’ actual or constructive knowledge in terms of the fourth category of the equitable doctrine of contra non valen-tem, resort to that doctrine is neither necessary nor appropriate in this case, as the codal article controls. While there is no significant difference between the definition of the notice requirement in either context, there is a difference in the rules of construction that apply. For example, as the majority points out, "the doctrine of contra non valentem only applies in ‘exceptional circumstances.’ ” Op. at p. 245, quoting Renfroe v. State, Dept. of Transportation and Development, 01-1646, p. 9 (La.2/26/02), 809 So.2d 947, 953. Prescriptive statutes such as LSA-C.C. art. 3493, on the other hand, are to be strictly construed against prescription and in favor of the obligation sought to be extinguished. Lima v. Schmidt, 595 So.2d 624, 629 (La.1992).