MOORE, J.
| Robert S. Nichols appeals a judgment sustaining an exception of prescription and dismissing his medical malpractice suit against Dr. Ravish Patwardhan and Comprehensive Neurosurgery Network LLC. For the reasons expressed, we affirm.

Factual and Procedural Background

The 67-year-old Nichols was suffering from back and lower left leg pain. On referral from his primary care provider, Dr. Hernandez, Nichols first saw Dr. Pat-wardhan in July 2008. On September 19, 2008, Dr. Patwardhan performed a fusion at L2-3 to alleviate the pain, but the symptoms persisted. On October 9, Dr. Pat-wardhan advised Nichols that post-op X-rays looked good, but he nevertheless referred him to pain management with Dr. Brewer. Dr. Brewer gave Nichols morphine.
On December 9, 2008, Nichols returned to Dr. Patwardhan with unabated pain in the back and lower left leg; Dr. Patwar-dhan ordered an MRI and CT scan. Dr. Patwardhan last saw Nichols on January 14, 2009, on which date he referred him to Dr. Brewer for three steroid injections to alleviate the ongoing pain.
Nichols took two shots, on February 3 and 26, 2009. On March 4, 2009, he was scheduled to see Dr. Patwardhan again, but he phoned to cancel that appointment; he stated that he would reschedule, but this never occurred. Nichols went to Dr. Brewer for the third injection on April 30, but told him that the shots were not working; apparently he never took the final shot.
[ 2On May 8, 2009, Nichols returned to his primary car provider, Dr. Hernandez, *324 for an unrelated problem, and told him that he was still having follow-ups with Drs. Patwardhan and Brewer. Dr. Hernandez found that Nichols had colon cancer, and performed a colon resection in December 2009.
According to Nichols, he did not learn that Dr. Patwardhan had apparently performed the fusion at the wrong level until December 6, 2011, when he saw Dr. Anil Nanda, another neurosurgeon.
On January 20, 2012, Nichols filed the instant medical malpractice claim with the Louisiana Patient’s Compensation Fund, naming as defendants Dr. Patwardhan, his company, Comprehensive Neurosurgery Network LLC, and Willis-Knighton Pier-remont, the hospital where the surgery took place.
Dr. Patwardhan and the LLC filed the instant exception of prescription, arguing that the claim was filed over three years after the final time Dr. Patwardhan saw and treated Nichols, January 14, 2009. They also argued that because Nichols never experienced any relief from Dr. Pat-wardhan’s surgery, he must have known from the outset that something was wrong.
Willis-Knighton also filed an exception of prescription, showing that the hospital’s final interaction with Nichols was the date of his discharge, September 12, 2008.
Nichols responded that he continued to receive treatment “under and at the direction of’ Dr. Patwardhan until April 30, 2009, when he went to 13receive the final injection prescribed by Dr. Patwardhan. At the hearing on the exception in June 2012, he argued that “at the minimum,” Dr. Patwardhan’s treatment continued through the February 26, 2009, injection because it was “at his direction.” He argued that all of Dr. Patwardhan’s post-op care was substandard, but he had no reason to suspect malpractice until December 6, 2011, when Dr. Nanda disclosed the surgical error.
At the hearing, Dr. Patwardhan argued that he did not administer the steroid injections, but only recommended them, and cannot be held to a continued doctor-patient relationship when somebody else is actually rendering the care.
The court found that the last date of treatment was January 14, 2009, and did not extend to “any referral that doctor defendant may have made” into February 2009. The court stated that although Dr. Patwardhan “ordered that certain injections take place as a part of a continuation of the treatment[,]” this “should not be attributed to the defendant.” The court sustained both exceptions, dismissing all defendants. Nichols has appealed the judgment only as to Dr. Patwardhan and his LLC.

The Parties’ Positions

Nichols advances five assignments of error[1] which he has condensed into three issues: (1) A doctor’s treatment of a patient does not end on the last date a doctor physically sees a patient; (2) A patient’s reasonable Lsubjective belief as to the existence of a doctor-patient relationship is enough to establish that the patient would not be in a position to file a *325 malpractice suit; and (3) A doctor’s continuous representation that he is working to make the patient better along with the representation that the treatment was performed correctly tolls the running of prescription. He contends that prescriptive statutes must be strictly construed in favor of the obligation sought to be extinguished. In re Noe, 2005-2275 (La.5/22/07), 958 So.2d 617. Prescription is suspended when there is a continuation of a special relationship in the providing of services or continued reliance on that relationship. In re Med. Review Panel of Moses, 2000-2643 (La.5/25/01), 788 So.2d 1173. This is because the special relationship of trust might hinder a patient’s inclination to sue. Taylor v. Giddens, 618 So.2d 834 (La.1993). Prescription does not begin to run until it was reasonable for the patient to recognize that the condition may be related to the treatment; mere knowledge of a problem is not sufficient. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502. The medical malpractice prescription statute, La. R.S. -9:5628, fixes prescription at one year after the act of negligence, or one year after the discovery of the negligence, with a three-year limitation from the date of the act. Crucially, he contends that the doctrine of contra non valentem applies to both periods.
Nichols argues that on this record, he continued to receive treatment from Dr. Patwardhan through April 30, 2009: “treatment” is not limited to “physical hands-on contact by the doctor with the patient,” but includes when the doctor “directs treatment, orders tests, interprets tests, etc.” He |saIso argues that the record objectively shows that Dr. Patwardhan was his doctor on March 4, 2009, when he (Nichols) phoned to cancel an appointment and say he would reschedule, and on May 8, 2009, when he told his primary care provider, Dr. Hernandez, that he (Nichols) was still under Dr. Patwardhan’s care. Also, Dr. Patwardhan never discharged him. Nichols argues that this constituted “continuous representation” that Dr. Pat-wardhan was treating him, and he reasonably believed this was so. He concludes that the doctor-patient relationship did not end until May 8, 2009, so the malpractice claim filed on January 12, 2012, was timely.
Dr. Patwardhan responds that the facts are not in dispute; critically, he had “no further contact with this patient since” January 14, 2009, and that is the date on which prescription began to run. He argues that contra non valentem will suspend the three-year limit of R.S. 9:5628 only in cases of fraudulent concealment, fraud, ill practices or misrepresentation, In re Med. Review Panel of Moses, supra, and none of these things are alleged. He cites a recent opinion holding that the three-year limit “cannot be interrupted or suspended other than by the medical review panel process,” Shaw v. Murtagh, 2009-2239 (La.App. 1 Cir. 1/13/11), 2011 WL 199118, writ denied, 2011-0320 (La.4/1/11), 60 So.3d 1255. He contends that the events after January 14, 2009, do not fit the “continuous representation rule” as stated in Carter v. Haygood, 2004-0646 (La.1/19/05), 892 So.2d 1261, in that the treatment after that date was merely perfunctory and not such as would have prevented Nichols from suing. He stresses that after January 14, 2009, he did nothing that would “hinder the patient’s inclination to sue,” Taylor v. Giddens, supra. He concludes that the claim was filed over three years after the last date of treatment rendered to Nichols and is therefore prescribed.

Discussion

The prescription of medical malpractice claims is regulated by La. R.S. 9:5628, which provides in pertinent part:
*326 § 5628. Actions for medical malpractice
A. No action for damages for injury or death against any physician * * *, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
In Borel v. Young, 2007-0419 (La.7/1/08), 989 So.2d 42 (on rehearing), the supreme court held that both the one-year and three-year periods set forth in the statute are prescriptive. Id. at 2, 989 So.2d at 54. However, the court further held that R.S. 9:5628 “is a prescription statute with a qualification, that is, the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect[.]” Id. at 18, 989 So.2d at 63; Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986).
In cases not regulated by a special statute, courts have utilized the concept of contra non valentem to suspend or interrupt the running of 17prescription against plaintiffs in four situations:
(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action;
(2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
(4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant (called “the discovery rule”).
Wells v. Zadeck, 2011-1232, pp. 8-9 (La.3/30/12), 89 So.3d 1145, 1150, and citations therein.
By contrast, under R.S. 9:5628, the court in Borel held that the discovery rule does not apply to suspend the three-year limitation on actions. Borel v. Young, supra at 18, 989 So.2d at 63; Hebert v. Doctors Memorial Hosp., supra.[2]
In other cases, the courts have suggested that if the defendant’s conduct rises to fraudulent concealment, misrepresentations or ill practices, then the courts would consider lifting the three-year limit. In re Moses, supra at 23, 788 So.2d at 1187; Braud v. Cenac, 2003-1696 (La.App. 3 Cir. 7/14/04), p. 3, 879 So.2d 896, 900-901, writ denied, 2004-2101 (La.11/15/04), 887 So.2d 484; William E. Crawford, 12 La. Civ. L. Treatise, Tort Law 2 ed. (West 2009), § 15:9. We have closely examined this *327 record and are constrained to |sSnd no allegation that Dr. Patwardhan was guilty of concealment, fraud or ill practices, such as would activate the dictum of In re Moses, supra. The record establishes only that for various reasons Nichols did not discover the exact nature of Dr. Patwar-dhan’s potential malpractice until December 2011, from Dr. Nanda. In the absence of proof of concealment, fraud or ill practices, we must follow Borel v. Young, supra, and hold that the discovery rule of contra non valentem simply does not apply to suspend prescription. Nichols’s third issue lacks merit.
With this conclusion, it is technically unnecessary to address Nichols’s first two issues, which essentially urge that prescription was suspended as long as he subjectively believed that a was in a doctor-patient relationship with Dr. Patwar-dhan, even though he was not actually receiving hands-on treatment. As already noted, unless the doctor’s acts amounted to concealment, fraud or ill practices, they do not suspend the three-year period. In re Moses, supra; Braud v. Cenac, supra.
Nichols correctly shows that the continuous representation rule will prevent the running of the one-year prescriptive period of R.S. 9:5628. In re Moses, supra. The supreme court has also held, however, that the continuous representation rule requires (1) a continuing treatment which is more than perfunctory, during which (2) the physician engaged in conduct which served to prevent the patient from availing himself of his cause of action, such as attempting to rectify the alleged act of malpractice. Carter v. Haygood, supra at 16, 892 So.2d at 1271; Shaw v. Murtagh, supra.
UThis record shows that after an office visit on January 14, 2009, Dr. Patwardhan never saw or even spoke to Nichols again. Whatever treatment he rendered to Nichols after that date cannot possibly be considered “more than perfunctory,” and does not show that he was trying to rectify the alleged malpractice. The district court was not plainly wrong to find that the final date on which Dr. Patwardhan rendered patient care to Nichols was January 14, 2009; that the instant claim, filed on January 20, 2012, was untimely under R.S. 9:5628; and to sustain the exception of prescription. Nichols’s second and third issues lack merit.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the plaintiff, Robert S. Nichols.
AFFIRMED.
LOLLEY, J., dissents with written reasons.

. The assignments are: (1) The court erred in finding that the last date of treatment was January 14, 2009; (2) The court erred in finding that the doctor-patient relationship ended on January 14, 2009; (3) The court erred in finding that the case had prescribed because it was filed more than three years after the last date of treatment; (4) The court erred in finding that the case had prescribed because it was filed more than three years after the end of the doctor-patient relationship; and (5) The court erred in not applying the date of discovery of the malpractice as the date that triggers the beginning of the prescriptive period.

. In Nestor v. Louisiana State Univ. Health Sciences Center, 40,378 (La.App. 2 Cir. 12/30/05), 917 So.2d 1273, writ denied, 2006-0221 (La.4/24/06), 926 So.2d 551, this court found that the three-year prescriptive period was suspended or interrupted merely by the plaintiff’s lack of knowledge that the neurosurgeon performed surgery at the wrong level of the back. In light of the subsequent holding of Borel v. Young, supra, we would consider our broad statement in Nestor overruled.