**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**14-779**


**IN RE: MEDICAL REVIEW PANEL PROCEEDING OF DONNA M. HICKMAN**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 247,430
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and John E. Conery, Judges.


**AFFIRMED.**

**James L. Carroll**
**Mixon & Carroll, PLC**
**Post Office Drawer 1619**
**Columbia, Louisiana  71418**
**(318) 649-9284**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Donna M. Hickman**

**Victor H. Sooter**
**Sooter & Associates**
**Post Office Box 1671**
**Alexandria, Louisiana 71309**
**(318) 448-8301**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Angela H. Moreau, M.D.**

**Eugene J. Sues**
**Gold, Weems, Bruser, Sues & Rundell**
**Post Office Box 6118**
**Alexandria, Louisiana 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Paul Smith, M.D.**

**Matthew J. Ungarino**
**Ungarino & Eckert L.L.C.**
**3850 North Causeway Boulevard, #1280**
**Metairie, Louisiana 70002**
**(504) 836-7564**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Christus St. Frances Cabrini Hospital**

**CONERY, Judge.**

Donna Hickman (Ms. Hickman) appeals the trial court's judgment which granted a peremptory exception of prescription and dismissed her medical malpractice action against Christus St. Frances Cabrini Hospital (Cabrini), Dr. Paul Smith, and Dr. Angela H. Moreau (hereafter sometimes referred to as Health Care Providers). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Hickman's was injured in a one-car rollover accident which occurred on January 21, 2012. She was taken to the Emergency Room of Cabrini, where she was examined by the Emergency Room physician, Dr. Moreau. Dr. Moreau ordered a CT[1] scan of her face, head, abdomen, and back to determine if she had any internal injuries or broken bones. The results of the CT scans were reviewed by Dr. Smith, the radiologist at Cabrini, who noted no evidence of degenerative disease or fracture. Ms. Hickman complained of pain in the lower mid-section of her back to Dr. Moreau and was released after approximately four hours with medication for pain and sutures in a head wound. Dr. Moreau recommended that she follow up with Dr. Amy Griffin, Ms. Hickman's primary care physician, for further evaluation. Ms. Hickman had no subsequent contact with Dr. Moreau or Dr. Smith after her treatment in the emergency room at Cabrini.

On January 31, 2012, ten days after the accident, Ms. Hickman, as instructed by Dr. Moreau, followed up with Nurse Practitioner Tracy Lyons at the Griffin Family Medicine Clinic (Griffin Clinic), the office of her primary care physician, Dr. Amy Griffin. Ms. Hickman had her sutures removed and discussed with Nurse

---

[1] A CT scan is x-ray computed tomography, which is a technology which produces virtual slices of the scanned object. This allows the user to see inside without cutting.

Practitioner Lyons "how bad her back was hurting."[2]  Based on their discussion,

Nurse Practitioner Lyons wrote a letter stating that Ms. Hickman "needed to have

an MRI done."  Ms. Hickman indicated when questioned in her deposition that her

back pain was, "Severe.  Very painful."  Due to the severity of Ms. Hickman's pain,

Nurse Practitioner Lyons prescribed additional pain medication.

At the January 31, 2012 visit, Nurse Practitioner Lyons and Ms. Hickman

discussed the necessity for an MRI.[3]  Ms. Hickman testified in her deposition that

she understood that the purpose of the MRI was, "To check that area of my back to

see if there was a problem."  Additionally, when asked about the MRI in her

deposition, "To see if something had been missed by --Dr. Moreau; is that

correct[,]" Ms. Hickman responded, "Right, or -- right."

On February 27, 2012, Ms. Hickman had an orthopedic consult with Dr.

David Bernard at the Huey P. Long Medical Center, and Dr. Bernard ordered an

MRI for Ms. Hickman that same day.  On February 27, 2012, the radiologist, Dr.

Joe Rankin, called Ms. Hickman after he had read her MRI.  He told her she had a

compression fracture at L-1 and recommended that she see an orthopedist.  Ms.

Hickman testified that Dr. Rankin "first [asked what] I did.  I told him.  And he

said, well, you've got a problem at this location and he said you need to – to get in

to see a doctor.  He said I don't know what they will -- what route they'll take, but

you need to get in to see a doctor."

Ms. Hickman called Nurse Practitioner Lyons and told her the MRI revealed

---

[2] Ms. Hickman's deposition was taken on January 21, 2014.  After the first exception of prescription was filed by Dr. Smith on March 12, 2014, Ms. Hickman, on March 26, 2014, completed an errata sheet, which contradicted some of her previous testimony.  The deposition and errata sheet were admitted into evidence at the hearing on April 28, 2014.

[3] An MRI or Magnetic Resonance Imaging is testing that uses radio wave energy to make pictures of organs and structures inside the body.  It can give different information than an x-ray or CT scan.

a compression fracture at L-1. Ms. Hickman faxed a copy of the MRI to the Griffin Clinic, which was forwarded, on March 5, 2012, by fax and received by Mid-State Orthopedic and Sports Medicine Center (Mid-State). Ms. Hickman had a medical history with Mid-State, having received treatment from her college friend, Dr. Mark Dodson, for prior injuries.

After prevailing on Dr. Dodson for assistance, due to her lack of medical insurance and the possibility she could not be seen by an orthopedist until October, on April 12, 2012, Ms. Hickman was seen by Dr. Dodson at the Louisiana State University Health Sciences Center (LSU-HSC) in Shreveport, Louisiana. Dr. Dodson reviewed the MRI taken on February 27, 2012, and the January 21, 2012 CT scan from Cabrini. Dr. Dodson then confirmed Dr. Rankin's diagnosis of a compression fracture at L-1 and arranged for Ms. Hickman to be seen by Dr. Richard McCall, an orthopedist at LSU-HSC. On August 30, 2012, Dr. McCall performed the surgical procedure necessary to address Ms. Hickman's compression fracture at L-1.

On April 11, 2013, Ms. Hickman filed a petition for medical malpractice against Dr. Moreau, Dr. Smith, and Cabrini with the Patients Compensation Fund, (PCF). Her petition identified January 21, 2012 as the date of her negligent treatment at Cabrini by Drs. Moreau and Smith. The petition also stated that April 12, 2012, the date of her appointment with Dr. Dodson, was when "Ms. Hickman was informed for the first time that she had a significant compression fracture of her lumbar spine."

The Health Care Providers filed a peremptory exception urging the objection of prescription in the judicial district court, which was set for hearing on April 28, 2014. The trial court, for reasons stated on the record, granted the peremptory

3

exception of prescription filed on behalf of the Health Care Providers on the basis that prescription began to run on February 27, 2012 and not April 12, 2012. February 27, 2012 was the date Ms. Hickman allegedly first discovered that she had a compression fracture at L-1 that purportedly had not been diagnosed and treated by Drs. Moreau and Smith at Cabrini. The trial court then dismissed with prejudice Ms. Hickman's claim for medical malpractice against all three Health Care Providers in a judgment dated May 8, 2014, which Ms. Hickman now timely appeals.

## ASSIGNMENT OF ERROR

On appeal, Ms. Hickman alleges that "The Trial Court erred in finding that the date of prescription began to run on February 27, 2012 instead of the date that **HICKMAN** saw Dr. Dodson on April [12,] 2012."

## LAW AND ANALYSIS

### *Burden of Proof*

Ms. Hickman filed her application for a medical review panel with the PCF on April 11, 2013. In a medical malpractice action, this request serves as the initial petition and suspends prescription from running. *In re Medical Review Panel for Claim of Moses*, 00-2643 (La. 5/25/01), 788 So.2d 1173.

Louisiana Revised Statutes 40:1299.39.1(B)(2)(a) [4] allows a health care provider, named in a petition, to bring a La.Code Civ.P. art. 927(6) exception of

---

[4] Louisiana Revised Statutes 40:1299.39.1(B)(2)(a) provides:

> The state or a person, against whom a claim has been filed under the provisions of this Part, may raise peremptory exceptions of no right of action pursuant to Code of Civil Procedure Article 927(6) or any exceptions or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the state medical review panel.

prescription in a court of competent jurisdiction and venue, without regard to "whether the medical review panel process is complete." *Moses*, 788 So.2d at 1177.

When an exception of prescription is urged, the normal procedure requires that the burden of proof rest with the mover, in this case, the Health Care Providers. "However, when the face of the petition reveals that the plaintiff's claim has prescribed, the burden shifts to the plaintiff to demonstrate prescription was suspended or interrupted. *Lima v. Schmidt*, 595 So. 2d 624 (La.1992)." *Id*. at 1177.

In this case, the alleged malpractice occurred on January 21, 2012, the date of the one-car rollover accident and Ms. Hickman's emergency room visit at Cabrini. However, Ms. Hickman's petition with the PCF was not filed until April 11, 2013. Thus, the claim appears to be prescribed on its face. However, in *Campo v. Correa*, 01-2707, p. 9 (La. 6/21/02), 828 So.2d 502, 509, the supreme court stated:

> [A] petition should not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularity in the petition show that the patient was unaware of malpractice prior to the alleged date of discovery and the delay in filing suit was not due to willful negligent or unreasonable action of the patient.

The petition filed by Ms. Hickman with the PCF on April 11, 2013, specifically states that April 12, 2013 was when "Ms. Hickman was informed <u>for the first time</u> that she had a significant compression fracture of her lumbar spine." Therefore, the petition is not prescribed on its face under the definition provided by the supreme court in *Campo*, and the burden of proof remains with the Health Care Providers. We must make a determination of whether Ms. Hickman knew or should have known about her cause of action before April 12, 2012, the date she

had her first appointment with Dr. Dodson, who compared the CT scan from Cabrini and the MRI and confirmed the compression fracture at L-1.

*Standard of Review*

Evidence was introduced at the hearing on the Health Care Providers' peremptory exception of prescription. When evidence is introduced at a hearing:

> [T]he district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Stobart v. State, Through DOTD,* 617 So.2d 880,992 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 882-83.

*Carter v. Haygood*, 04-646, p. 9 (La. 1/19/05), 892 So.2d 1261, 1267.

*Exception of Prescription Analysis*

Louisiana Revised Statutes 9:5628(A) provides the starting point for our analysis of the Health Care Providers' peremptory exception of prescription:

> A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

In *Carter*, the supreme court reiterated its analysis of the application of La.R.S. 9:5628 to the question of prescription. The second portion of the analysis is applicable to the facts of this case and is known as the "discovery rule."

> Second, in cases involving damages that are not immediately apparent, a discovery exception to the general rule is codified. The discovery exception embodied in Section 5628 is a codification of the fourth category of *contra non valentem* for cases in which the cause of action

6

is not immediately knowable. Under this discovery rule, such actions prescribe one year from the date of discovery of the alleged act, omission or neglect.

*Carter*, 892 So.2d at 1267 (quoting *Moses*, 788 So.2d at 1178-79).

Cases dealing with the issue of prescription in a medical malpractice case clearly instruct:

> [T]hat each case must be decided on its own peculiar facts. The law does not require that a patient be informed by an attorney he has a medical malpractice action before prescription begins to run. Likewise, it is not a requirement that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll.

*Parker v. Dr. X*, 97-841, p.4 (La.App. 3 Cir. 12/10/97), 704 So. 2d 373, 375; *See also Lambert v. Metrailer*, 485 So.2d 69 (La.App. 1 Cir.1986), *writ denied,* 488 So.2d 1023 (La.1986).

In *Braud v. Cenac*, 03-1696 (La.App. 3 Cir.7/14/04) 879 So.2d 896, *writ denied*, 04-2101 (La. 11/15/04), 887 So.2d 484, a panel of this court summarized the factors that should be considered in this court's determination of when a prescriptive period begins to run, when a patient, such as Ms. Hickman, does not immediately recognize that her condition may have been related to treatment or in this case, the lack thereof:

> Louisiana Revised Statute 9:5628's one-year prescriptive period "commences running on the date the injured party discovers or should have discovered the facts upon which his cause of action is based." In other words, constructive knowledge is sufficient to trigger the running of prescription, and the plaintiff is "deemed to know that which he could have learned through reasonable diligence." The heart of the inquiry is the reasonableness of the plaintiff's action or inaction. This inquiry requires consideration of her education, intelligence, and the gravity of her condition, as well as the defendant's conduct. Reasonability is a factual determination which an appellate court cannot disturb, absent a finding of manifest error.

*Id*. at 902 (footnotes omitted).

In its reasons given on the record at the close of the hearing, the trial court stated:

> Certainly I think that any of us that go into a hospital or doctor's office and we are x-rayed we expect that that doctor that looks at that x-ray reads it correctly. I don't think that we expect our doctors not to be able to see a fracture. Or to diagnose whatever is purpose of that radiology exam and everything. I just make that comment, I don't know whether malpractice has, in fact, been committed here but I hope any time I go in that my doctor is not going to be missing that. If I was just confronted today with the fact that Ms. Hickman after having her accident and being seen at Cabrini Hospital on January the twenty-first then followed up on January the thirty-first with continuing and, in fact, increased pain and it was recommended to her that she have an MRI I don't think that I would find this case as challenging as I do with a follow up visit or conversation with the radiologist, Dr. Rankin on February the twenty-seventh when he advised Ms. Hickman that she had a fracture - a compression fracture at L-1 and that she needed to see an [orthopedist]. I'm assuming that she had had no intervening incident that could've resulted in that and so that the only thing that she could possibly think back to was her automobile accident and the fact that she was initially told by the Cabrini Hospital doctors that they didn't find any evidence of any fractures or whatever. And so I think at that point, I think that that is the defining point in this case and I think that it is reasonable for this court to find that at that time Ms. Hickman had constructive knowledge as that term of art is used in our jurisprudence. And in part is captured in our statute. And so for those reasons, I'm going to grant the motion for summary judgment and ask Mr. Sues and the others on the part of the hospital and the doctors to prepare a judgment accordingly.
>
> MR. SUES: Your Honor, could I correct one thing?
>
> THE COURT: Yes.
>
> MR. SUES: Your Honor said grant the motion for summary judgment, it's actually a peremptory exception of prescription.
>
> THE COURT: I'm sorry. You are right. A peremptory exception of prescription. Thank you.

The trial court found factually that on February 27, 2012, Ms. Hickman, after her discussion with Dr. Rankin and review of her MRI, had the necessary constructive knowledge required to begin the running of prescription on her

medical malpractice claim against the Health Care Providers. In reviewing the trial court's findings, our analysis must include the "reasonableness of the plaintiff's action or inaction." *Braud*, 879 So.2d at 903.

*Braud* instructs that this court is required to take into consideration both Ms. Hickman's "education and intelligence." *Id*. at 903. The record reflects that Ms. Hickman obtained her undergraduate college degree from Louisiana College. After college she worked as a drug representative for at least three pharmaceutical companies, where she received training in the risks and benefits of the companies' medications. She also received training in human anatomy and education involving the "legal aspects" of the medications, which would have included the potential for litigation from the side effects of the medications. As a result of her college education and exposure to the medical and legal field, Ms. Hickman possessed both the intelligence and life experiences necessary to evaluate her medical/legal situation.

As would be expected of an individual with her background and knowledge, Ms. Hickman followed up with Dr. Griffin's office approximately ten days after the rollover accident, as instructed by Dr. Moreau, to have her sutures removed. Ms. Hickman's deposition testimony indicates that the pain in her back had not improved and was "severe," at that initial visit with Nurse Practitioner Lyons on January 31, 2012. Based on Ms. Hickman's continuing back pain issues, Nurse Practitioner Lyons ordered an MRI and prescribed additional medication. The record before the trial court indicated that Ms. Hickman continued to have significant pain until her condition was eventually addressed by surgery.

On February 27, 2012, approximately five weeks after the rollover accident, Ms. Hickman was referred by the Griffin Clinic to Dr. Bernard. Dr. Bernard

9

ordered an MRI for the same day. Also on February 27, 2012, Dr. Rankin read the MRI and called Ms. Hickman to report the results. Dr. Rankin informed Ms. Hickman of the compression fracture at L-1, and recommended that she see an orthopedist.

At this juncture, as the trial court correctly found, there had been "no intervening accident that could've resulted in that and so that the only thing that she could possibly think back to was her automobile accident and the fact that she was initially told by the Cabrini Hospital doctors that they didn't find any evidence of any fractures or whatever."

The trial court termed the February 27, 2012 call from Dr. Rankin to Ms. Hickman, confirming her compression fracture at L-1, as the "the defining point in the case." The trial court found it was "reasonable . . . to find that at that time Ms. Hickman had constructive knowledge as that term of art is used in our jurisprudence."

The referral of a patient to another physician can constitute the constructive knowledge necessary to commence the running of the one year prescriptive period. In *Amos v. Crouch*, 46,456 (La.App. 2 Cir. 6/29/11), 71 So.3 1053, Mr. Amos last consulted with his employer, Dr. Crouch, about his rectal bleeding on January 3, 2000. Dr. Crouch had been treating him for hemorrhoids and did not refer Mr. Amos to a specialist or for any additional testing. At the urging of his family and due to his own concerns, Mr. Amos saw a physician at the Green Clinic in Ruston, Louisiana on January 11, 2000. The examination at that appointment revealed a mass that appeared to be cancer and was confirmed by other tests. Mr. Amos was diagnosed with colorectal cancer and began treatment, which included radiation, chemotherapy, and surgery.

10

Mr. Amos filed his petition with the PCF on April 6, 2001, and alleged that Dr. Crouch had committed medical malpractice by failing to recommend and conduct the proper diagnostic testing. The medical review panel found the standard of care would have been to require more testing, but also found the issue of a breach was subject to a resolution of "material issues of fact." *Amos*, 71 So.3d at 1054.

Suit was filed on April 26, 2003, and Mr. Amos died on May 3, 2003. His surviving children were substituted as plaintiffs in both their father's malpractice suit and their own wrongful death claim. The defendants filed an exception of prescription after a summary judgment was granted by the trial court and reversed by the supreme court.[5] The defendants claimed that January 11, 2000, the date that Mr. Amos was diagnosed with cancer, marked the date prescription began to run. The plaintiffs claimed that May 1, 2000, when Mr. Amos called Dr. Crouch and asked her to continue his treatment and she terminated the doctor/patient relationship, was the date that began the tolling of prescription. *Id.* at 1055.

The trial court granted the defendant's exception of prescription and found that prescription began to run on January 11, 2000, when Mr. Amos cancer was confirmed. A panel of our sister court affirmed the lower court and found that the trial court's determination that "Mr. Amos had notice enough to excite attention, to put him on guard and call for inquiry when his cancer was diagnosed on January 11, 2000," was not "clearly in error or manifestly wrong." *Id* at 1057.

Counsel for Ms. Hickman argued at the hearing and on appeal that she had experienced previous back injuries and could not have determined with certainty

---

[5] *Amos v. Louisiana Medical Mutual Insurance Company*, 41,302 (La.App.2 Cir. 8/4/6), 936 So.2d 875.

that the compression fracture at L-1 was the result of the accident and misdiagnosis by the Health Care Providers.

However, as argued at the hearing and on appeal by counsel for the Health Care Providers, Ms. Hickman's deposition clarified this issue for the trial court:

Q    Did you have any back complaints at Cabrini?[6]

**A    Yes, sir.**

Q    What part of your back?

**A    The lower mid section.**

Q    Was that some of the same area that you'd previously had complaints about?

**A    No, sir.**

Our courts have consistently held that "Prescription does not begin to run against a party who is ignorant of the pertinent facts, as long as the ignorance is not willful, negligent or unreasonable." *Parker*, 704 So.2d at 375; *see also Griffin v. Kinberger*, 507 So.2d 821 (La.1987). *Parker* further instructs:

> On the other hand, when the facts show the injured party "had knowledge of facts *strongly suggestive* that an untoward condition or result may be the result of improper treatment and there is no effort by health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to the plaintiff" for the purposes of the one year prescriptive period; plaintiff's inaction for more than one year under such circumstances is not reasonable.

*Parker*, 704 So.2d at 375 (citing *Maung-U v. May,* 556 So.2d 221 (La.App 2 Cir. 1990), *writ denied*, 559 So.2d 1385 (La.1990).

Based on the record before us, we find that Ms. Hickman had the necessary constructive knowledge to begin the tolling of the one year prescriptive period on

---

[6] This question is in reference to her treatment received in the Cabrini Emergency Room after Ms. Hickman's one car accident on January 21, 2012.

February 27, 2012, and thus, her claim for medical malpractice against the Health Care Providers was prescribed when her petition was filed with the PCF on April 11, 2013. Considering Ms. Hickman's education and intelligence, her continuing pain from the time of the January 21, 2012 rollover accident, the confirmation by Dr. Rankin after reviewing the MRI on February 27, 2012, that she had a compression fracture at L-1, without any intervening incident, and the fact that she had not previously suffered back pain at this location, we must find that the trial court was not manifestly erroneous in finding that Ms. Hickman knew, on February 27, 2012, that the Health Care Providers had failed to properly diagnose her back injury on January 21, 2012. The judgment of the trial court dismissing Ms. Hickman's petition filed more than one year later on April 11, 2012 is affirmed.

## CONCLUSION

Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Donna M. Hickman.

**AFFIRMED.**