**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2086
_____

DEBRA JOHNSON,
                                        Appellant
                    v.

GLAXOSMITHKLINE, LLC;
GLAXOSMITHKLINE HOLDINGS, INC.

_____

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Nos.: 2-11-cv-05782 and 2-12-cv-05455)
District Judge: Honorable Paul S. Diamond

_____

Submitted under Third Circuit LAR 34.1(a)
on November 10, 2015

Before: CHAGARES, SHWARTZ and RENDELL, <u>Circuit Judges</u>

(Opinion filed: January 5, 2016)

_____

O P I N I O N*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, <u>Circuit Judge</u>:

Debra Johnson appeals the District Court's grant of summary judgment to GlaxoSmithKline (GSK). In the late 1950s, Johnson's mother, while pregnant with her, had allegedly taken thalidomide distributed by GSK, which caused her to be born with birth defects. Johnson did not sue GSK for this alleged negligence until 2012, and the District Court granted summary judgment to GSK, holding her claim was barred by the one-year limitations period. We will affirm.

## I. Background

In February 1959, Johnson was born in Louisiana with severe birth defects. Since Johnson was a young child, her mother, Doris Williams, believed that she knew what had caused her daughter's birth defects. During her pregnancy, she had taken what her doctor allegedly told her were experimental pills from Germany for morning sickness. Her suspicions were confirmed by her daughter's doctor, who told her in the 1960s that other women who had taken these pills from Germany had given birth to children with injuries similar to her daughter's.

Ms. Williams kept this information secret from Johnson—that is, until February 13, 2012, when Ms. Williams was 80 and Johnson was 52. That day, Ms. Williams first told Johnson what she believed had caused her birth defects. Until that day, Johnson had never spoken with any family, friends, or doctors about what had possibly caused her birth defects. In fact, she had never done anything at all to investigate their cause.

2

Two months later, on April 14, Johnson's son called her to tell her to "google" the word "thalidomide" because he thought that she was a "textbook case." Once she did, she saw pictures of birth defects caused by thalidomide, motivating her to further research the drug. She also dug out her medical records from her younger years. In the 1970s, she had taken these records from the hospital after she learned that they would be destroyed. These records described her injuries as "congenital" (present at birth) and "bilateral." (App. 1228–29.) She had not looked at them until this time, prompted by her Internet research on thalidomide. She then filled out a law firm's form that she found on the Internet.

Shortly thereafter, on September 24, 2012, she sued GSK. According to her complaint, in the 1950s, GSK had obtained thalidomide from a German company called Grunenthal and conducted limited U.S. clinical trials on mice and humans. Ms. Williams had allegedly taken thalidomide, resulting in Johnson's defects.

GSK moved for summary judgment, arguing that Johnson's claim was barred by Louisiana's one-year limitations period. Johnson countered that the discovery rule tolled the limitations period until no earlier than one year before she filed her suit. The District Court disagreed and granted GSK summary judgment. On appeal, she contests this ruling.

II.    Discussion[1]

---

[1] Our review of a District Court's grant of summary judgment is plenary. Although the statute-of-limitations is usually an affirmative defense, here, Johnson would bear the burden at trial to prove that her claim is timely, because her claim is time barred on the

The District Court ruled that Louisiana law applied (that ruling is not challenged on appeal). Under that state's law, Johnson's personal injury claim is subject to a one-year limitations period, which begins "to run from the day injury or damage is sustained." La. Civ. Code Ann. art. 3492. As a result, because Johnson sustained her injuries at birth, the one-year statute-of-limitations bars her claim unless she can toll it until at least September 24, 2011—one year before she filed her lawsuit.

Johnson argues that the discovery rule tolled the one-year limitations period until at least September 24, 2011. This rule tolls the limitations period until "the date the injured party discovers or should have discovered the facts upon which [her] cause of action is based." *Davis v. Johnson*, 36 So. 3d 439, 441 (La. Ct. App. 2010). But a plaintiff's ignorance of the facts on which her claim is based cannot be "attributable to [her] own willfulness or neglect; that is, a plaintiff will be deemed to know what [she] could by reasonable diligence have learned." *Corsey v. La. Dep't Corr.*, 375 So. 2d 1319, 1322 (La. 1979). Johnson claims that she neither knew nor reasonably could have known that thalidomide had caused her birth defects until at least September 24, 2011.

The District Court addressed Johnson's argument that her mother's knowledge should not be imputed to her, and concluded that because Louisiana law does not permit retroactive application of its minor tolling statute, her mother's knowledge would be

---

face of her complaint. *See Wells v. Zadeck*, 89 So. 3d 1145, 1149–50 (La. 2012). On summary judgment, then, GSK only had to discharge its burden of production, at which point the burden shifted to Johnson to show a genuine issue of material fact on her argument that her claim was timely. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

4

imputed to Johnson.  It then proceeded to discuss the discovery rule as applied to the set of facts known to Williams, and concluded that her "suspicions obligated Ms. Williams to exercise reasonable diligence is ascertaining the cause of her daughter's injuries." (App 16.)  Thus, the statute of limitations ran <u>long</u> before Johnson instituted the instant action.  The District Court also correctly reasoned that, even if Williams' knowledge was not imputed to Johnson, Johnson never investigated the cause of her injuries, and "even a cursory inquiry would have provided Plaintiff with abundant information concerning the connection between thalidomide and her birth defects." (App 18.)  The District Court properly rejected Johnson's other arguments, namely contesting the Court's refusal to credit her expert, as well as her argument that her inaction was caused by GSK's fraudulent concealment.

We find the District Court's analysis to be correct in all respects and will therefore affirm its grant of GSK's motion for summary judgment.